Filed 6/17/14  P. v. Mendez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>RAUL EDDIE RAMIREZ MENDEZ,<br><br>  Defendant and Appellant. | E056544<br><br>(Super.Ct.No. RIF1102648)<br><br>ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING<br>[CHANGE IN JUDGMENT] |

The petition for rehearing is denied.  The opinion filed in this matter on May 23, 2014, is hereby modified, as follows:

On page 1, the last sentence of the first paragraph is modified to read, "Affirmed with directions."

On page 2, the last sentence of the first paragraph is modified to read, "We reject his contentions and affirm, while ordering the trial court to correct an error appearing in the determinate abstract of judgment."

On page 29, the last sentence of the paragraph beginning on page 28 is modified to read, "In so doing, the court sentenced defendant, as to the aggravated sexual assaults of a

1

child, under both section 269, subdivision (d) and section 667.6, subdivisions (d) and (e)."

On page 29, footnote number 14 is modified to read, "Although the sentencing court, in its oral pronouncement, imposed midterms of six years as to each of the section 288, subdivision (a)(1) convictions, the determinate abstract of judgment does not indicate that the six year term for the first section 288, subdivision (b)(1) conviction was a full consecutive term and it incorrectly reports that the six year terms for the remaining section 288, subdivision (b)(1) convictions represent one-third of the midterm as consecutive sentences.  The abstract should be amended to note that the sentences for all four section 288, subdivision (b)(1) convictions were consecutive full terms.

On page 30, the disposition is modified to read, "The trial court is directed to amend the determinate abstract of judgment to show that the six year terms for each of the section 288, subdivision (b)(1) convictions were full consecutive terms.  In all other respects, the judgment is affirmed.

Except for these modifications, the opinion remains unchanged.  This modification does change the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ_____
P.J.

I concur:

MILLER_____
J.

2

Filed 5/23/14  P. v. Mendez CA4/3 (unmodified version)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E056544 |
| v. | (Super.Ct.No. RIF1102648) |
| RAUL EDDIE RAMIREZ MENDEZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  H. A. "Skip" Staley, Judge.  (Retired judge of the Kern Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Jamie Popper, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Randall Einhorn and Julianne Karr Reizen, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury convicted defendant, Raul Mendez, of four counts of committing forcible lewd and lascivious acts on and three counts of aggravated sexual assault of a minor. (Pen. Code, § 269, subds. (a)(4) & (5).)[1] He was sentenced to prison for three 15 years to life sentences plus 24 years and appeals, claiming the evidence was insufficient to support the verdicts, his trial attorney was incompetent and he was incorrectly sentenced. We reject his contentions and affirm.

## FACTS

The victim testified that she began living with defendant, her father, when she was in kindergarten. She testified that defendant would come into her bedroom when she was sleeping. All the touching discussed below occurred at night time while the victim was in her bed. Sometimes, defendant would touch the victim up to three times a week. The victim was truthful when she reported that defendant told her not to say anything about the touching. She did not tell defendant to stop because she was scared of what he was doing to her and because he was her father. She said that one time, she awoke to defendant touching her. When asked what she did, she replied, "Nothing[,] I was scared." Every time defendant tried to touch her, the victim moved away, closer to the wall, but this did not stop him every time and he continued to touch her. Also when he tried to touch her, she would grab the blankets and tuck them under her, but this did not

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

stop him.  She thought that one time, defendant pulled the blankets off her in order to continue to touch her, but she "didn't know."

The first time defendant touched her was when she was nine years old and in the fourth grade, which was in 2007.  When she was nine years old, defendant touched her on her genitals with his finger[2].  At first, defendant put his finger on top of her genitals, like one puts a hot dog on a hot dog bun.  When defendant touched the victim's genitals, the victim tried to get away from defendant, but he continued to touch her after she tried this.  It made her uncomfortable when he touched her genitals.  At a later time, he put his finger inside her.  She said that when defendant touched her genitals with his fingers, it made her feel uncomfortable, mad, scared and upset and she tried to get away from him.  Defendant also put his tongue on her genitals more than three nights and this happened once a week for a couple of weeks.  He also put his tongue on her breasts.[3]  Defendant rubbed his penis[4] against the victim's genitals while she was wearing clothes and underwear.  He tried to put his penis inside her, and managed to insert the tip, which hurt and this happened "once in a while" but she could not remember.  When he touched her

---

[2] The victim was shown a drawing of the front of a girl and the prosecutor circled the genital area of the drawing, labeling it "front part," as the victim called it, and the prosecutor circled both nipples and labeled this area "top," as the victim called it.

[3] See footnote 2, *ante*.

[4] Again, the victim described this as defendant's front part, and the prosecutor showed her a drawing of a boy and circled the genitals on the drawing, labeling them "boy's front part."

3

with his penis, he put liquid on her stomach[5] and then wiped it off with a towel while she kept her eyes closed. When the victim was nine, ten or eleven years old, defendant was stronger and taller than the victim and he laid on top of her, she tried to get him off her by moving and she had a hard time doing this.

The victim told her stepmother, who told her that she had to protect herself. The stepmother told the victim's grandmother, she put a door stop on the door of the victim's bedroom and she bought the victim a lock for her door, which the victim, at her stepmother's direction, asked defendant to install. Although the lock stopped defendant from coming into her bedroom, the victim rarely used it because she was afraid of the shadows on her bedroom window. The stepmother talked to defendant, who said he would stop, but he did not. After a long while, defendant came back into the victim's bedroom once before the victim told her aunt and uncle on a holiday. Thereafter, the touching stopped.[6] After this, she told a fellow school mate, then the school police, because she wanted the touching to stop, then she told the police.

On one occasion, defendant re-entered the victim's room after the victim told him to get out and this scared her. Also on one occasion, when the victim's stepmother was taking a shower, the victim told defendant to get out of her room because she was trying to sleep and defendant said he would and left, but then returned and she reiterated that

---

[5] She testified she thought it was urine.

[6] She also testified that she did not remember if the touching stopped after she told her aunt and uncle.

she was sleeping and he left again. The victim reported this to her stepmother, who told the victim that she was going to call the police, but she did not. On another occasion, defendant pretended to go to the bathroom during the night, and the victim woke up to hear her stepmother slam the bathroom door really hard. The stepmother appeared to be very angry and she told defendant that she had seen what he was doing, which was putting his head under the blanket that covered the victim and licking her stomach and genitals.

Despite the stepmother, grandmother, aunt and uncle being told what defendant was doing, the police did not come and talk to the victim, which made the victim feel like she had to protect herself, which is what all of them told her. After the victim told her stepmother what defendant was doing, she felt that her stepmother started treating her own biological children nicer than the victim and she told her stepmother so. This made the victim want to run away. She felt that telling her stepmother would result in the breakup of the family, including her baby half-brother and three other half-brothers. She did not call the police because she had been instructed when she was younger not to use the phone and because she didn't want anything to happen to defendant, her stepmother or her half-brothers. However, she told her stepmother because she trusted her and thought that the stepmother would stop the touching. Although the stepmother talked to defendant, and he promised to stop, he did not. Defendant would "ground" the victim if she did not listen to what he told her to do. The victim said that she loved defendant and did not want him to go to jail.

Defendant admitted to police that 6 to 12 months previously[7] he was drunk and went into the victim's bedroom and rubbed her vagina and ejaculated on her. He said "the other day," but then changed it to more than six months previously, his wife caught him lifting the victim's blankets. He said that probably once he performed oral sex on the victim, but he did not remember because he was drunk. He allowed that maybe two times his hands touched the victim, the first time being a year previously, when he touched her leg, and the last time six months previously. He admitted that six to eight months previously, he had ejaculated on the victim. All together, "this" (whatever "this" was) occurred three times. The third time was when he lifted the blanket and touched the victim's legs and his wife thought he was doing something wrong, but he was not.

A doctor who reviewed the report authored by the doctor who examined the victim[8] testified that the latter had a partially healed tear in her hymenal tissue which had been caused by an injury. The tear meant that the victim had been sexually penetrated by something, and it could have been a finger or a penis. The tear was at least a week or two old and was probably at least three months old.

---

[7] Unfortunately, no one testified as to when this interview took place, and the CD of it is not marked as to when it occurred.

[8] Contrary to defendant's assertion, this doctor did not examine the victim. The doctor that did had pneumonia at the time of trial.

1. *Sufficiency of the Evidence*

    a. *Force or Duress*

The jury was instructed that the charged aggravated sexual assaults of a child by forcible oral copulation and by forcible sexual penetration had to be accomplished by force or duress. Force was defined as "enough physical force to overcome the other person's will." Duress was defined as "a direct or implied threat of force, violence, danger, hardship, or retribution that causes a reasonable person to do or to submit to something that . . . she would not otherwise do or submit to. In deciding whether the act was accomplished by duress, consider all the circumstances, including the age of the other person and his relationship to the defendant . . . ." As to the charged forcible lewd and lascivious acts, the jury was instructed that defendant had to have used force or duress in committing them. The only instruction as to the force required was the following, "The force used must be substantially different from or substantially greater than the force needed to accomplish the act itself." The definition of duress was the same given for the other charged crimes, discussed above.

Contrary to defendant's assertion, "[t]he definition of the word 'force' in sexual offense statutes depends on the offense involved. To convict for committing a forcible lewd act against a child in violation of section 288, subdivision (b), the prosecution must prove that the defendant used physical force substantially different from or substantially greater than that necessary to accomplish the lewd act itself. [Citation.] *In contrast, the requisite amount of force for . . . convictions of aggravated sexual assault of a child*

7

*by . . . forcible oral copulation . . .  [¶]  . . .  [¶] . . . [and by forcible] sexual penetration*

*[is the amount] sufficient to overcome the victim's will.*  [Citation.]"  (*In re Asencio*

(2008) 166 Cal.App.4th 1195, 1200, 1205, fn. omitted; Accord, *People v. Guido* (2005)

125 Cal.App.4th 566, 574-576 (*Guido*).)**9**

---

**9** The prosecutor below made the same error appellate counsel for defendant make here, i.e., she asserted during argument to the jury that the force needed for the three charged aggravated sexual assaults (two by forced oral copulations and one by forced penetration), *contrary to the instructions given the jury,* was force that is substantially different from or substantially greater than the force necessary to accomplish the act.

While we acknowledge that Division One of this court in *People v. Cochran* (2002) 103 Cal.App.4th 8, 13 (*Cochran*) held that force in the context of aggravated sexual assault of a child is that which is substantially different from or substantially greater than that necessary to accomplish the act itself, in doing so it relied solely on *People v. Cicero* (1984) 157 Cal.App.3d 465, 474 (*Cicero*).  However, *Cicero* concerned only convictions of section 288, subdivision (b), not aggravated sexual assault of a child. Additionally, Division Three of this court cited *Cochran* as the sole support for the same holding in *People v. Alvarez* (2009) 178 Cal.App.4th 999, 1004.  Other than our conclusion that *Cicero*, and, therefore, *Cochran* are not appropriate authority for either of these courts to take such a position, this jury was instructed, as we have already stated, that the force necessary for the charged aggravated sexual assaults was only that sufficient to overcome the victim's will.  If defendant insists on taking the position that the definition of force for purposes of section 288, subdivision (b) also applies to aggravated sexual assault of a child, we wonder why he is not also challenging the force instructions given here on the latter.

In his reply brief, defendant, citing no authority, asserts, "the underlying offense in Counts 1 and 2 [violations of section 288a], does not have the requirement [that] the offense be against the victim's will like in rape."  However, defendant was charged in counts 1 and 2 with violating section 288a, subdivisions (c) (2) or (3) or (d), and in count 3 with violating section 289, subdivision (a), which required, during the relevant period, that the forcible oral copulation and forcible sexual penetration be against the victim's will.  (§§ 288a, subds. (2), (3), (d), 289, subd. (a)(1).) The appellate court in *Guido* observed of aggravated sexual assault of a child by forcible oral copulation, "As with forcible rape, the gravamen of the crime of forcible oral copulation is a sexual act accomplished against the victim's will by means of force, violence, duress, menace or fear of immediate and unlawful bodily injury.  As with forcible rape, it is only when one participant in the act uses force to commit the act against the other person's will that an

*[footnote continued on next page]*

Our view of any claim of insufficiency of the evidence is limited. "'"When the sufficiency of the evidence is challenged on appeal, the court must review the whole record in the light most favorable to the judgment to determine whether it contains substantial evidence—i.e., evidence that is credible and of solid value—from which a rational trier of fact could have found the defendant guilty beyond a reasonable doubt."'" [Citations.]" (*People v. Hill* (1998) 17 Cal.4th 800, 848-849.) We must presume in support of the judgment the existence of every fact the trier of fact could have reasonably deduced from the evidence. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.)

Further, before we may set aside a judgment for insufficiency of evidence, it must clearly appear that there is no hypothesis under which we could find sufficient evidence. (*People v. Rehmeyer* (1993) 19 Cal.App.4th 1758, 1765.) "In deciding the sufficiency of the evidence, a reviewing court resolves neither credibility issues nor evidentiary conflicts. [Citation.] Resolution of conflicts and inconsistencies in the testimony is the

---

*[footnote continued from previous page]*
otherwise lawful act becomes unlawful. [¶] Unlike sexual abuse of a child by use of force [(§ 288, subd. (b))], a specialized definition of force is not necessary to the crime of forcible oral copulation because a different concept of force is not needed to distinguish between two crimes or to give substance to the Legislature's use of the term 'force' such as it is in section 288, subdivision (b)(1)." (*Guido*, *supra*, 125 Cal.App.4th at p. 576.) "[The holding of *People v. Senior* (1992) 3 Cal.App.4th 756], that the term 'force' as it is used in . . . forcible oral copulation . . . requires proof that the defendant used physical force substantially different from or substantially greater than the force inherent in the sexual act itself [citations] . . . needs to be reassessed in light of [*People v.*] *Griffin* [(2004) 33 Cal.4th 1015]." (*Id.* at p. 575.) "[T]he Legislature did not intend the word 'force,' as that term is used in [the forcible rape statute] to have a specialized legal definition." (*Id* at p. 574.)

9

exclusive province of the trier of fact. [Citation.]" (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) "'Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.' [Citation.]" (*People v. Guerra* (2006) 37 Cal.4th 1067, 1141, disapproved of other grounds in *People v. Rundle* (2008) 43 Cal.4th 76, 151.) "Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction. [Citation.]" (*Young*, at p. 1181.) This standard of review applies even "when the conviction rests primarily on circumstantial evidence." (*People v. Kraft*, *supra*, 23 Cal.4th at p. 1053.)

Given this court's limited role on appeal, defendant bears an enormous burden in claiming that there was insufficient evidence to sustain his conviction for aggravated sexual assault by means of sexual penetration. We conclude that there was sufficient evidence of force, i.e., force sufficient to overcome the victim's will, as to the three aggravated sexual offenses. The victim testified that she did not tell defendant to stop because she was afraid of what he was doing to her and because he was her father. On one occasion, defendant re-entered her bedroom after the victim told him to get out, and this scared her. She testified that every time defendant tried to touch her, she moved away, closer to the wall, but this did not stop him every time and he continued to touch her. She also tied her efforts to get away from him to incidents during which he touched her genitals and when he laid on top of her. When defendant tried to touch her, she

10

grabbed the blankets and tucked them under her, but this did not stop him. She kept telling person after person until she finally found someone who called the police, all in an effort to make it stop. She used both a door stop and a lock on her bedroom door to keep defendant out. She was nine when the touching began and it continued for some time. She was uncomfortable, mad, scared and upset when he touched her genitals with his finger. It hurt when he inserted the tip of his penis into her vagina. He succeeded in tearing her hymen. This constituted sufficient evidence that she submitted to these three acts against her will.

There was also sufficient evidence to support a jury finding that defendant accomplished these acts through the use of duress. All of the circumstances should be considered in determining the existence of duress, including the age of the victim, the victim's relationship to defendant, threats to harm the victim, physically controlling a resisting victim, and warnings that revealing the molestation could jeopardize the family. (*People v. Veale* (2008) 160 Cal.App.4th 40, 46-47 [Fourth Dist., Div. Two].) Even when a victim testified that no force or threats were involved, it has been held that sufficient evidence of duress existed where the victim was eight years old at the time of the offenses; at that age "'adults are commonly viewed as authority figures'" and "'[t]he disparity is physical size between and eight-year-old and an adult also contributes to a youngster's sense of his [or her] relative physical vulnerability.'" (*People v. Wilkerson* (1992) 6 Cal.App.4th 1571, 1579.) In addition, "when the victim is a young as [six years

11

old] and is molested by her father [or stepfather] in the family home, in all but the rarest cases duress will be present." (*People v. Cochran* (2002) 103 Cal.App.4th 8, 16, fn. 6.)

The victim was nine years old when the touching began. Defendant told her not to tell about the touching. He was stronger and taller than her when she was 9, 10 and 11 years old. Defendant was her father and disciplinarian. The victim loved him and was sufficiently loyal to him, despite what he did to her, that she did not want him to go to jail. She feared that telling her stepmother would result in the break-up of the family. Despite her telling adult after adult in her family, nothing happened to defendant. However, it appeared to her that she was being punished by her stepmother after telling her because, thereafter, her stepmother treated her biological children more favorably than she did the victim. She did not tell the police because she didn't want anything to happen to defendant or to her stepmother and half-brothers. This constituted sufficient evidence of duress.

As to the force necessary for the four forcible lewd and lascivious acts, as the jury was instructed, it had to be substantially different from or substantially greater than the force necessary to accomplish the act itself. We agree with defendant that because the prosecutor did not elect any specific act in connection with these charges, we are left only with the victim's testimony as to indicia of force that applied to *all* of defendant's acts. She testified that she moved away from defendant every time he tried to touch her, and a reasonable juror could conclude that defendant either got closer to the victim or pulled her towards him in order to accomplish the touching required for forcible lewd and

12

lascivious acts. However, we need not determine if this was force substantially different or substantially greater from the force necessary to accomplish the act itself because there was sufficient evidence of duress, as discussed above.

Defendant cites the holding of *People v. Hecker* (1990) 219 Cal.App.3d 1238, 1242 that the victim's testimony that she felt pressured psychologically and was subconsciously afraid was insufficient to establish duress. However, in *People v. Veale*, *supra*, 160 Cal.App.4th at page 48, this court, *long ago* said, "Also, while the court in *Hecker* stated that 'psychological coercion' without more was insufficient to establish duress, the court in [*People v.*] *Cochran*[, *supra*, 103 Cal.App.4th 8] disagreed. In *Cochran, . . .* [Division One of this] court found the language in *Hecker* 'overly broad' and explained: 'The very nature of duress is psychological coercion. A threat to a child of adverse consequences, such as suggesting the child will be breaking up the family or marriage if she reports or fails to acquiesce in the molestation, may constitute a threat of retribution and may be sufficient to establish duress, particularly if the child is young and the defendant is her parent. We also note that such a threat also represents a defendant's attempt to isolate the victim and increase or maintain her vulnerability to his assaults.' [Citation.] [¶] In *Cochran*, the court held that there was sufficient evidence of duress to support the defendant's conviction for violating section 288, subdivision (b), reasoning in part: 'The victim was only nine years old. Cochran is her father with whom she resided. She was four feet three inches tall. He was five feet nine inches tall and outweighed her by about 100 pounds. The sexual acts occurred in the family home she shared with

Cochran and her mother. Throughout the videotape [of the molestation], Cochran directs and coaches the victim what to do. It is clear the daughter is reluctant to engage in the activities and, at most, acquiesces in the conduct.' [Citation.] [¶] The *Cochran* court further stated that, 'Additionally, there was the victim's trial testimony. Although she testified she was not afraid of Cochran, that he did not beat or punish her and never grabbed or forced her, she also testified she was mad or sad about what he was doing to her, that he gave her money or gifts when they were alone together, and that he told her not to tell anyone because he would get in trouble and could go to jail. [¶] This record paints a picture of a small, vulnerable and isolated child who engaged in sex acts only in response to her father's parental and physical authority. Her compliance was derived from intimidation and the psychological control he exercised over her and was not the result of freely given consent. [Fn. omitted.] Under these circumstances, given the age and size of the victim, her relationship to the defendant, and the implicit threat that she would break up the family if she did not comply, the evidence amply supports a finding of duress.' [Citation.]" (*Veale*, at p. 48.)

Defendant also relies on holding of *People v. Espinoza* (2002) 95 Cal.App.4th 1287, 1321, that the fact that the victim was afraid of the defendant was insufficient to establish duress where there was no evidence that the fear was based on anything defendant had done other than continuing to molest the victim. However, the victim in *Espinoza* was 12 years old—the molestations here began when the victim was nine. *Espinoza*, itself, acknowledged that where the defendant is a family member and the

14

victim is young, the position of dominance and authority of the defendant and his continuous exploitation of the victim are relevant to the existence of duress. (*Id*. at pp. 1319-1320.) Other relevant factors include physically controlling the victim when the victim attempts to resist, and warnings to the victim that revealing the molestation would result in jeopardizing the family. (*Id*. at p. 1321.) Here, in addition to the youth of the victim, defendant's position of dominance and authority and his continuous exploitation of the victim over years, the victim testified that the touching continued despite her stepmother confronting defendant about them and him promising to stop, and the three other adult relatives being informed. Additionally, defendant physically controlled the victim when she attempted to resist by overcoming her attempts to move away from him and pulling the blankets away she had used to protect herself. On one occasion, the victim witnessed her stepmother getting very angry at defendant and threatening to call the police when she caught him putting his head under the victim's blankets and licking her stomach and genitals. Given the victim's concern for the welfare of her stepmother, her four half-brothers and defendant, witnessing this created additional pressure on the victim. Finally, defendant told the victim not to tell anyone about the touching.

Defendant mischaracterizes the record by asserting that "when she told [defendant] to leave her room, he did[.]" However, the victim testified that on only one occasion she caught defendant coming back into her room after she told him to get out. Thus, to the extent defendant suggests that the victim told him on more than one occasion to get out of her bedroom and he complied, this is incorrect. Defendant also asserts that

the victim was not scared of defendant because of anything he did and "pretty much" the only reason she was scared was because she was not used to the touching and did not think it was right. The testimony in this regard was as follows:

"Q. [PROSECUTOR]: What were you scared of?

"A. [VICTIM]: Him [(meaning, defendant)].

"Q. [PROSECUTOR]: Did he do anything to make you feel scared?

"A. [VICTIM]: No.

"Q. [PROSECUTOR]: Was it just what he was doing to you?

"A. [VICTIM]: Yes.

"Q. [PROSECUTOR]: Was it the fact that he was your dad?

"A. [VICTIM]: That too."

It was not until cross-examination by defense counsel that the following colloquy occurred,

"Q. [DEFENSE COUNSEL]: [W]hen you said you were scared, you were scared because things were happening to you that you weren't used to happening to you and you didn't think it was right? Is that pretty much it . . . ?

"A. [VICTIM]: That's pretty much it."

Thus, defense counsel led the 14-year-old victim to mitigate her earlier testimony. However, given all her other testimony, especially about her efforts to prevent the continuation of defendant's molestation of her, her helplessness in the face of these

16

efforts and the fact that he tore her hymen, we remain steadfast in our conclusion that there was sufficient evidence of duress.

We agree with the People that the testimony concerning force or duress need not specifically be tied to each act found by the jury to constitute the offenses. In *People v. Jones* (1990) 51 Cal.3d 294, the Supreme Court observed, concerning a victim who cohabitates with the defendant, "the victim typically testifies to repeated acts of molestation occurring over a substantial period of time but, lacking any meaningful point of reference, is unable to furnish many specific details, dates or distinguishing characteristics as to individual acts or assaults. [¶] . . . [¶] [T]estimony describing a series of essentially indistinguishable acts of molestation is frequently the only testimony forthcoming from the victim. To hold that such testimony, however credible and substantial, is inadequate to support molestation charges would anomalously favor the offender who subjects this victim to repeated or continuous assaults." (*Id*. at pp. 299-300.) "[E]ven generic testimony (e.g., an act of intercourse 'once a month for three years') outlines a series of *specific*, albeit undifferentiated, incidents, *each* of which amounts to a separate offense, and *each* of which could support a separate criminal sanction." (*Id*. at p. 314.) Not only does defendant cite no authority requiring that a victim tie indicia of force or duress to each specific act the victim claims occurred, but doing so would violate the spirit of *Jones*. If, as *Jones* holds, detailed specifics as to each act is not required, neither can be specificity as to the facts underlying force or duress as to each act.

17

## 2. *Ineffective Assistance of Trial Counsel*

Given defendant's admission to the police that he had had rubbed the victim's vagina and ejaculated on her, that his wife had caught him lifting the victim's blankets, that he performed oral sex on the victim "probably once," that perhaps two times he touched the victim and did something three times, all the while, he claimed, being heavily intoxicated, not to mention the victim's testimony, defense counsel wisely said during argument to the jury, "I am not going to stand in front of you and tell you, . . . ['F]ind my client absolutely not guilty of everything he's charged with.['] What I'm saying is, make your decision in a rational, nonriotous, nonemotional way. . . . [Y]ou need to make your decisions in a fair and logical way, not swayed by anger, passion, the nature of the crime that's charged. [Don't s]ay, [']Oh, well, we think he did something, so let's convict him of everything.['] [¶] You need to deliberate the individual counts and you need to make a decision that's justified by the evidence and that's justified by the law that the Judge instructs you." Specifically, as to the charged aggravated sexual assaults, defense counsel said, "A significant issue in the case—and one of the reasons why defendants and defense attorneys sometimes go to trial[,] is the issue of what constitutes the force and duress that is needed to make this one act versus whether or not it's one of the lesser included acts. [¶] This is a significant issue. And the prosecut[or] telling you in an emotional way that she believes that force and duress were used, that's all very interesting. But it's up to you to listen to the Judge's instruction and decide. [¶] The mere fact that something may have happened doesn't automatically mean that it

18

happened with force and duress. We could be talking about a lesser included offense. [¶] And so I would ask you to make a decision whether or not there's some reasonable doubt as to the force and duress as to the counts where it's alleged, which I think most significantly would be [the aggravated sexual assaults], and view that." As to the charged forcible lewd and lascivious acts, counsel argued that there was an issue whether the jurors would be able to unanimously agree as to which of the four acts testified to by the victim constituted these offenses. Based on defendant's assertion in his statement to the police that he was heavily intoxicated when he committed the sexual acts he conceded he had committed, counsel argued that there was also an issue as to whether defendant had the requisite specific intent to commit the charged acts.[10]

Defendant here contends that counsel below was incompetent for failing to argue "why the evidence of force or fear was insufficient" and failed to discuss reasonable doubt and the presumption of innocence.[11] However, defense counsel specifically mentioned reasonable doubt in connection with his argument as to force or duress on the aggravated sexual assaults. Although he did not specifically repeat this reference in

---

[10] Because the jury hung on the weapons possessions charges also leveled against defendant, we will not discuss defense counsel's argument as to them, except to point out that counsel must have done a fairly commendable job, because the jury was unwilling to convict his client of them.

[11] We note, with interest, that following his convictions, defendant retained private counsel who filed, inter alia, a motion for a new trial on the basis of incompetence of trial counsel, alleging eight different deficiencies in counsel's representation of defendant. Counsel's argument to the jury was not amongst them.

19

relation to the two "issues" he identified in connection with the charged forcible lewd and lascivious acts, we believe the jury understood that he meant just that.

In asserting that trial counsel was ineffective, defendant carries a heavy and difficult burden. (*People v. Lucas* (1995) 12 Cal.4th 415, 436.) Defendant must establish his claim as a matter of demonstrable reality and not as a matter of speculation. (*People v. Garrison* (1966) 246 Cal.App.2d 343, 356.) We accord great deference to the tactics of trial counsel and avoid second guessing counsel's decisions. (*In re Fields* (1990) 51 Cal.3d 1063, 1069.) Concessions made by counsel can be amongst valid tactical choices when the evidence of guilt is strong. (*People v. Bolin* (1998) 18 Cal.4th 297, 334, 335.) There is a strong presumption that counsel's acts are within the wide range of reasonable assistance. (*Strickland v. Washington* (1984) 466 U.S. 668, 689.)

Even if defendant was able to carry the heavy burden of demonstrating that his trial attorney's argument to the jury fell below the objective standard of reasonableness under prevailing professional norms, he would also have to demonstrate a reasonable probability that had counsel done all the things defendant now claims he should have, but did not, during argument, defendant would not have been convicted as he was. (*Strickland v. Washington*, *supra*, 466 U.S. at p. 694; *Richardson v. Superior Court* (2008) 43 Cal.4th 1040, 1050, 1051.) This probability has to be sufficient to undermine confidence in the outcome of the case. (*Strickland v. Washington*, *supra*, 466 U.S. at p. 694.) As defendant points out, there must be ""'"a *reasonable chance*, more than an *abstract possibility*" [citation]' [citation]" that a result more favorable to defendant would

20

have been reached. (*Richardson v. Superior Court*, *supra*, 43 Cal.4th at p. 1050.) Notably, defendant's post-conviction counsel conceded, "[O]bviously a confession or an admission is very detrimental to someone in trial, especially in a child molest case." Additionally, we are in no position to judge the effect of the victim on the jury—certainly, she was a young lady who had experienced more than her fair share of horrors that a child should never have to undergo. She had been without her mother since kindergarten and even before that, she had "problems in [her] mother's house"; despite telling her stepmother and three other adult relatives about the molestations, none of them came to her aid in any effective way or told the police; she was, in her view, treated differently by her stepmother after revealing the molestations than the stepmother treated her own children and she ended up in foster care. As she so painfully testified, this victim questioned why she was even born, given the fact that "her life w[as] so miserable[.]" While the jury could not be governed by pity or sympathy for the victim, it presumably reasoned that she had little incentive to lie about what had transpired between her and defendant, particularly as she explained that she still loved the defendant and did not want to see him punished or her family broken up. The physical evidence, i.e., the tear in her hymen, supported her story.

This trial, as most child molest cases, hinged on her credibility. As the trial court observed, defendant was charged with fewer crimes that the victim testified he committed. Under the circumstances, we cannot say that if trial counsel had said more about reasonable doubt, the insufficiency of the evidence of force or fear, the vagueness

21

of the victim's testimony about the timing and number of acts and defendant's intent during them, there is a reasonable probability defendant would have enjoyed a better outcome.

## 3. *Sentencing*

### a. *Section 654*

As to each of the three aggravated sexual assaults of a child charges and the four forcible lewd and lascivious acts, the jury was instructed that defendant could be convicted of the lesser offenses of sexual battery and the lesser crime to sexual battery of battery. The jury was also instructed, "The People have presented evidence of more than one act to prove the defendant committed the charged and/or lesser offenses in Counts 1 through 7. You must not find the defendant guilty unless: [¶] You all agree the People have proved the defendant committed at least one of these acts and you all agree on which act he committed for each offense; or [¶] You all agree the People have proved the defendant committed all of the acts alleged to have occurred within this time period and have proved the defendant committed at least the number of offenses charged. [¶] Each of the counts charged in this case is a separate crime."

The prosecutor argued to the jury as to two of the charged aggravated sexual assaults of a minor by forcible oral copulation (counts 1 and 2) that there was evidence that defendant orally copulated the victim more than two times, so the jury needed to decide if he orally copulated her two separate times, and, if so, and he did it using force or duress, then he was guilty. As to the charged aggravated sexual assault of a minor by

22

forcible sexual penetration (count 3) the People argued that defendant penetrated the victim's genitals with his finger and if the jury concluded that this happened at least one time, he was guilty. As to the four charged forcible lewd and lascivious acts, under section 288, subdivision (b) (counts 4-7), the People pointed out that the defendant needed to touch the victim, and examples of his doing this was when he "put his whole body on her[,]" touched her after she moved away from him, touched her vagina, licked her breasts and ejaculated on her. The prosecutor continued, "[I]f he ha[d] to touch her arm to get her to move closer to him, that's a 288(b). Doesn't have to be [a touching] on her sexual organ. [¶] When he touched her leg to get her to move closer to him, that's a 288(b). . . . [¶] But he did touch her sexual organ, and he did it a lot of times. And just because we charged it separately doesn't mean that you can't use that act, as long as it's a separate act, to get to your conclusion." The prosecutor said the jury could convict defendant of these counts "if you find he committed an act—any act that he committed— and there are so many to chose from—all you have to do is agree on which one. And there's a unanimity instruction that the Judge is going to give you that's going to deal exactly with that. [¶] So even though in this case we have so many things that [the victim] said he did to her, so many times, *you just have to pick one time for each count. So we have four alleged in addition and separate to the first three.* [¶] . . . [I]f you find that he licked her 20 times, . . . then you can [convict him on counts] 1 and 2 for the licking, [on count] 3 for the finger, then you can say [that counts] 4, 5, 6 and 7 are additional lickings . . . . If you find that he licked her five times . . . as long as you agree

23

that there are separate acts for each one . . . . [¶] . . . [¶] We have a lot more than seven times that he touched her in a sexual way. All you have to do is decide which ones he did . . . ."

Considering the instructions the jury was given and the argument, as stated above, defendant's premise that "[t]he jury was permitted to find the same conduct in counts 1 through 3 constituted three of counts 4 through 7[,]""the jury verdicts necessarily found only four separate acts" and defendant "receive[d] two convictions for the same act", therefore, under 654, he should not have been sentenced for three of the four lewd and lascivious offenses, cannot support his conclusion.

Defendant relies on *People v. Roberson* (1998) 198 Cal.App.3d 860 (*Roberson*), but his reliance is misplaced. There, the defendant was convicted of procuring a child for lewd and lascivious acts on a certain date and aiding and abetting forcible lewd and lascivious acts on a minor on the same date, both based on defendant driving the minor victim to a work camp where three or four other men had sex with her. (*Id*. at pp. 865, 871.) The appellate court concluded that defendant's procurement of the victim constituted the aiding and abetting, and since the double punishment prohibition of section 654 applied when one offense facilitates the commission of another, defendant could not be punished for both. (*Id*. at p. 871.) The court rejected the People's argument that any one of the three or four acts could have constituted the forcible lewd and lascivious act of which defendant was convicted, therefore, the act of procuring the victim did not necessarily precede the actual lewd act. (*Ibid*.) The appellate court

concluded that there was no basis in the evidence for concluding that the act of procuring the victim did not precede and make possible the lewd act of which defendant was convicted. (*Ibid.*) The court pointed out that the jury may have concluded that defendant procured the victim for a particular worker, and he aided and abetted the lewd act committed on her by that same laborer, therefore, the procuring facilitated the lewd act. Beyond this, the appellate court was unwilling to speculate that the jury convicted defendant of procuring the victim for a different worker than the worker who committed the lewd act, for which defendant was also convicted. (*Id.* at pp. 871-872.) In our view, the People's position in this case made no sense whatsoever, the defendant's and the appellate court's did, however, in the end, none of this has anything to do with the instant case, where it is clear that no act for which defendant was convicted facilitated another.[12]

More to the point, given the instructions and argument of the prosecutor, one need not

---

[12] Defendant fails to explain how the holding in *Roberson* is "squarely on point." He merely quotes from the opinion, the quote containing all the information in our summary of the case, above, then states, "Thus, under *Roberson*, sentences for three of the four section 288 convictions here were prohibited."

Although not tying his argument to *Roberson*, defendant, finally, in his reply brief, hints at the applicability of *Roberson* to the facts here. He points to the prosecutor's argument that the jury could convict defendant of committing lewd and lascivious acts based on a number of overtly sexual acts the victim described or if defendant touched her after she moved away from him or touched her leg or arm to get her to move closer to him. This, of course, as the act at issue in *Roberson*, would constitute a touching that facilitated the subsequent overtly sexual touching, and, given that, defendant would have a decent argument that section 654 prohibited punishment for both. However, the victim never testified that defendant touched her after she moved away from him in order to accomplish a subsequent overtly sexual touching. Therefore, it is highly unlikely that the jury convicted him of any of the counts of lewd and lascivious acts based on this.

speculate that this jury knew that it could convict defendant of each lewd and lascivious act charged based only on an act that was *different from* every other act for which they convicted him.

Defendant asserts that the right to a jury trial required the jury to find that each of his lewd and lascivious acts convictions was based on a separate act before each could be punished. He cites as "similar in context" *People v. Coelho* (2001) 89 Cal.App.4th 861 (*Coelho*). "In *Coelho . . . ,* the Court of Appeal, relying upon the principles underlying the *Apprendi* line of decisions, concluded that the provision of the Three Strikes law that *requires* a trial court to impose a *consecutive* Three Strikes sentence for each current offense of which a defendant is convicted that is 'not committed on the same occasion, and not arising from the same set of operative facts' as another current offense (§§ 667, subds. (c)(6), (7), 1170.12, subds. (a)(6), (7)) should be interpreted to require a trial court to impose consecutive sentences only where the jury expressly found (or, in light of the record, must have found) beyond a reasonable doubt that its separate convictions were based on offenses that were not committed on the same occasion and did not arise from the same set of operative facts. [Citation.] In the absence of such an explicit or implied jury finding, the court in *Coelho* held, a trial court is not *required* to impose consecutive Three Strike sentences, and must exercise its ordinary discretion in determining whether to impose consecutive or concurrent sentences. [Citation.]" (*In re Coley* (2012) 55 Cal.4th 524, 557.) The *Coley* court went on to observe that *Coelho* preceded the United States Supreme Court's opinion in *Oregon v. Ice* (2009) 555 U.S. 160, "where the high

court held the *Apprendi* line of decisions does not apply to factual findings that bear on the question whether multiple sentences are to be imposed consecutively or concurrently." (*Id*. at p. 557, fn. 18.) Our high court went on to express no opinion about the continued validity of *Coelho* in light of *Oregon v. Ice*. (*Ibid*.) However, in *Porter v. Superior Court* (2009) 47 Cal.4th 125, 137, the California Supreme Court said of *Oregon v. Ice*, "[W]hen the [C]ourt recently held that *Apprendi* does not govern the decision to impose concurrent or consecutive sentences, it explicitly recognized states' sovereign interest in administering their own criminal justice systems."

Moreover, in *People v. King* (2010) 183 Cal.App.4th 1281, 1324, the Second District concluded that "the United States and California Supreme Courts have held that the decision whether to run individual sentences consecutively or concurrently does not implicate the Sixth Amendment right to a jury trial. [Citations.]" (Accord, *People v. Quintanilla* (2009) 170 Cal.App.4th 406, 414.) We agree.

Finally, even if *Coehlo* has continued validity, the factual determination there, i.e., whether the crimes were committed on the same occasion *and* arose from the same set of operative facts, is very different from the factual determination defendant challenges here, i.e., that he was convicted of each crime based on a separate act. As we have concluded, the *jury* here necessarily found an act, separate and apart from all the others, to support each of the convictions.

27

b. *Consecutive Sentences*

Section 269, subdivision (c) provides that the sentencing "court shall impose a consecutive sentence for each [conviction of aggravated sexual assault of a child] . . . if the crimes involve . . . the same victim on separate occasions as defined in subdivision (d) of Section 667.6."[13]  Section 667.6, subdivisions (d) and (e) provides, in pertinent part, "A full, separate and consecutive term shall be imposed for each violation of . . .  [¶] . . . [¶] . . . subdivision (b) of Section 288.  [¶] . . . [¶] . . . paragraph (2) or (3) of subdivision (c), or subdivision (d) . . . of Section 288a[]  [¶]  [and] . . . subdivision (a) . . . of Section 289."  "In determining whether crimes . . . were committed on separate occasions under this subdivision, the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon his . . . actions and nevertheless resumed sexually assaultive behavior. Neither the duration of time between crimes, nor whether or not the defendant lost or abandoned his . . . opportunity to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate occasions."  (§ 667.6, subd. (d).)  After the sentencing court's attention was drawn to these provisions, the court said, "[D]ue to the vast number of offenses alleged [by the victim], the court would find that as to all the offenses, that they were . . . on separate occasions.  The Court . . . would find the defendant had a reasonable opportunity to reflect upon his actions and nevertheless

---

[13] Contrary to defendant's assertion, section 269, subdivision (d) does not require *full* consecutive sentences.

resumed sexually assaultive behavior and that . . . there's more than ample evidence that they were done on separate occasions for the Court to make this finding and that that's been proven beyond a reasonable doubt. [¶] . . . That does require that the sentences be served consecutively." The court below then imposed three consecutive 15 years to life sentences for the aggravated sexual assaults of a child and four mid-term consecutive six year sentences for the forcible lewd and lascivious acts. In so doing, the court sentenced defendant, as to the aggravated sexual assaults of a child, under both section 269, subdivision (d) and section 667.6, subdivisions (d) and (e), *but did not impose **full** consecutive sentences for the forcible lewd and lascivious acts convictions, despite being required by section 667.6, subdivisions (d) and (e) to do so, given the factual findings it made.*[14]

"Once the [sentencing] court has found, under section 667.6, subdivision (d), that a defendant committed the sex crimes on separate occasions, we will reverse 'only if no reasonable trier of fact could have decided the defendant had a reasonable opportunity for reflection after completing an offense before resuming his assaultive behavior.' [Citation.]" (*People v. King*, *supra*, 183 Cal.App.4th at p. 1325.)

Defendant concedes that there is substantial evidence that counts 1 and 2 occurred on separate occasions. However, he asserts that the evidence was insufficient to establish

---

**14** To the extent defendant suggests that he received *full* consecutive sentences for the lewd and lascivious acts convictions, he is incorrect.

that count 3 and the lewd and lascivious acts occurred on occasions other than when all the remaining acts occurred. To be sure, the victim did not testify that any one of these acts occurred on the same night as any of the others.[15] As the sentencing court observed, given the number of acts the victim testified occurred, a reasonable trier of fact could easily conclude that the sexual penetration and lewd and lascivious acts occurred on different nights from each other and from the oral copulations, and defendant had a reasonable opportunity to reflect before committing each one.

### DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
                                                            P. J.


We concur:

HOLLENHORST
                    J.

MILLER
                    J.

---

**15** The sentencing court noted this. We must confess that we are puzzled by defendant's concession that the two oral copulations occurred on different occasions, when the victim was just as vague about the timing of their commission as she was about any of the other offenses, except, as we observe, that she did not testify or even suggest that two sexual acts occurred during the same night.