[No. F007440. Fifth Dist. Feb. 18, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
LENNIS LAVELLE ROBERSON, Defendant and Appellant.

[Opinion certified for partial publication.*]

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I and II.

COUNSEL

Philip R. Clarkson, under apopointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, James T. McNally and Robert C. Miller, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

PETTITT, J.*—

STATEMENT OF THE CASE

On March 26, 1986, an information was filed in Kern County Superior Court charging appellant, Lennis Lavelle Roberson, with the following 20 felony counts:

Count one: Violation of Penal Code[1] section 182 (conspiracy);

Counts two and seventeen: Violation of section 261, subdivision (2) (forcible rape);

Counts three, four, five, seven, nine, eleven, thirteen, sixteen and eighteen: Violation of section 288, subdivision (b) (lewd and lascivious conduct with a child under 14 by use of force, violence, duress, menace or fear);

---

*Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.

[1] All statutory references are to the Penal Code unless otherwise indicated.

Counts six, eight, ten, twelve and fifteen: Violation of section 266j (procurement of a child under the age of 14 for lewd and lascivious acts);

Count fourteen: Violation of section 207, subdivision (b) (kidnapping of a child for lewd acts);

Count nineteen: Violation of section 266i, subdivision (b) (pandering);

Count twenty: Violation of section 266h (pimping).

On May 28, 1986, a jury returned its verdict, finding appellant guilty on all counts except count four, on which he was acquitted, and count three, where he was found guilty of violating section 288, subdivision (a), a lesser but necessarily included offense of section 288, subdivision (b).

Appellant was sentenced to 54 years in state prison. This sentence was determined as follows: Count ten was selected as the base term and on that count the midterm of six years was selected; on counts two, five, seven, nine, eleven, thirteen, sixteen and seventeen, the midterm of six years was selected and the court ordered those sentences to run consecutive to count ten and each other; on counts fifteen and twenty, the midterm of six years was selected and the court ordered the sentences to run concurrent to all others and each other; on counts one, three, six, eight, twelve, fourteen, eighteen and nineteen, the midterm of six years was selected but these sentences were stayed pursuant to section 654.

## THE FACTS

Since the sufficiency of the evidence to support some of the convictions is at issue, it is necessary to present a somewhat detailed statement of the factual circumstances of this case.

On Tuesday, February 18, 1986, 12-year-old Tonya W. ran away from the Jamison Children's Shelter in Bakersfield. Tonya, who was being housed at this shelter because she had run away from her last foster home, proceeded toward Union Avenue in Bakersfield in hope of finding her Aunt Chrissy, a prostitute who operated on Union Avenue. Tonya believed her aunt would give her a place to stay. Approximately 35 minutes later Tonya reached Union Avenue, and a short time after this arrival a gray, old model Cadillac, occupied by appellant and his codefendant, "Caine,"[2] pulled up alongside of Tonya. At this time Tonya asked the occupants if they knew

---

[2] "Caine," also known as Karen Statem or Karen Sorrell, was the codefendant charged in the information and named as a party to the conspiracy but is not a party to this appeal.

her Aunt Chrissy. Caine replied that she did, and although she and appellant told Tonya that they would help her locate her aunt later, they wondered if Tonya wanted to go for a ride first. Thinking that perhaps she would see her aunt, Tonya got into the car. Although Tonya did see Chrissy on the road while she was with appellant and Caine, Tonya made no attempt to flag her aunt down because Chrissy was with her pimp.

Appellant and Caine took Tonya to room 246 of a motel in Bakersfield. The three of them sat in the room conversing for a short time, then at some point appellant removed his clothes, followed by Caine taking off hers as well. Tonya was told she was going to learn how to be a hooker, and Caine proceeded to put a condom on appellant's penis using only her mouth. Caine orally copulated appellant, then Tonya herself was told to put a prophylactic on appellant in the same way and orally copulate him, which she did (count three). Subsequently, Caine put another prophylactic on appellant in the same manner, and the two of them engaged in sexual intercourse in the presence of Tonya. After they finished, appellant told Tonya to get onto the bed, where he proceeded to penetrate her vagina in an act of rape (count two). All the while Caine kept telling Tonya, who was a virgin, to "relax."

Earlier that evening, the precise time being unclear, Caine had told Tonya that one or both of them had once before killed a girl, and Tonya would have her "brains blown out" if she did not cooperate. Also at some point appellant placed a pistol to Tonya's head and pulled the trigger, but the gun did not fire. Caine also told Tonya that Tonya was going to be started off at the labor camps to get ready for the streets, since she was going to be made a prostitute with appellant as her pimp. The first evening Tonya was taught the Spanish words necessary to ask a man if he wanted to engage in intercourse, "quieres cojer," and the Spanish words for "twenty dollars," "vicente pesos." Appellant, then later Caine, left the motel that evening. Tonya did not try to escape because "I was scared. I don't know." Tonya was not given any food this first evening.

The next morning, Wednesday, February 19, 1986, Tonya was again left alone in the room, this time for a period somewhere between 10 and 45 minutes. Tonya placed calls to her friends Joe and Amy McAteer, and her aunt's boyfriend, Charlie Brown. She did not tell any of them what was taking place. She also did not call her social worker, even though she had the number. Later this Wednesday, at some point in the afternoon, Caine took Tonya to a trailer where she was told to have intercourse with a black man who paid Caine $20 to $25. Later in the afternoon Caine transported Tonya to a labor camp where Tonya had sex with 14 men, each of whom paid $20 (the events of this day encompass counts six through nine).

Subsequently, Tonya was taken back to the motel room where she was able to shower before she and Caine drove to a graveyard area where Caine apparently gave appellant the money paid earlier in the day by the black man and the farm laborers.

The next evening, Thursday, February 20, 1986, Caine and appellant took Tonya to two more labor camps where Tonya had sex with three or four more men who paid $20 to $30 each (counts ten and eleven). Upon completion of these acts at the second camp, appellant, Caine, and Tonya left the labor camp. Appellant was dropped off at someone's home, while Caine and Tonya returned to the motel room. After the return, Caine orally copulated Tonya, telling her such an act is something women as well as men would be willing to pay for (count five). It was this day that Tonya was given a hamburger, the first sustenance she had been given other than a couple of "cokes" since the ordeal began.

The next afternoon, Friday, February 21, 1986, Caine took Tonya to a "project" where a man paid Caine $100 to orally copulate Tonya. Thereafter, Tonya was taken to another labor camp where she was forced to have sex with two more men (the events of this day encompass counts twelve through fourteen). This evening Caine turned money over to appellant, and later Tonya was given a second hamburger.

The next day, Saturday, February 22, 1986, appellant arrived at the motel room in the afternoon; he ordered Tonya to remove her clothes, then forcibly engaged her in sexual intercourse (count seventeen). Later that afternoon appellant and Caine drove Tonya to yet another labor camp (count fifteen) where again, upon arrival, Caine offered Tonya for sale to laborers. Two men paid Caine $20 each, and each man separately took Tonya into the bathroom for sex (counts sixteen and eighteen). Each man complained to Caine about Tonya and demanded a refund. At this time Caine lectured Tonya about letting the men "finish," and told her if it happened again Caine would beat her up. A third man was present, 19-year-old Zacarias Arreola, and he paid Caine $20 to take Tonya into the bathroom as well. However, Zacarias did not intend to engage Tonya in sex. He had noticed that she was trembling and also that she appeared scared, so once in the bathroom he asked her if she was being forced to do these things. Tonya replied that she needed help, and Zacarias told her he could help her. Tonya told Zacarias that Caine and appellant were armed, and that she was afraid. When Zacarias responded he and his friends were armed as well, Tonya demanded to see the gun and bullets. Tonya also told Zacarias to call the police. While Zacarias and Tonya were in the bathroom, others were working to pry the window open. When they had done so, Tonya was helped through the window, and she and her rescuers ran for the

apple fields and a building where they stayed until appellant and Caine left the camp. While they were hiding, Zacarias ordered one of his friends to get the license number of the gray Cadillac, and this number was later reported to the police. Before leaving for the police station, however, Tonya and Zacarias proceeded to the camp premises where Tonya was given food and a blanket.

Upon arrival at the police station in the early morning hours of Sunday, February 23, 1986, Tonya was met by Alberta Dougherty, a senior deputy sheriff with the Kern County Sheriff's Department. Officer Dougherty observed that Tonya stank, was very thin, and was warm to the touch. Tonya was complaining of being cold, of being nauseous, and of having stomach cramps. Hickeys were present on Tonya's neck and breast, and her ankle was bruised as well. Although Tonya appeared tired, Officer Dougherty observed that Tonya was communicating in a "wound up" and "wired" sort of way. Tonya did not allow a rape kit to be performed on her at this time, and in Officer Dougherty's opinion Tonya may have been on cocaine or PCP. Tonya testified that Caine had given her drugs during the five-day period, and she stated that at least once she had smoked a PCP cigarette. However, the urine sample taken from Tonya on February 24, 1986, revealed no traces of drugs.

The results of an examination done on Tonya by Dr. Jess Diamond, a pediatrician specializing in sexual assault cases, were consistent with a finding that Tonya had been sexually molested. The defense pointed out that the results might also be consistent with a finding that the sexual activity was consensual.

The defense also presented the testimony of two of Tonya's former foster parents who opined that Tonya was untruthful. The second foster parent also testified that Tonya had on occasion threatened to become a prostitute, and a foster sister stated that Tonya once said she could handle a prostitute's life easier than a straight life.

Appellant was also charged, in addition to the charges outlined above, with pandering and pimping (counts nineteen and twenty). The jury found appellant guilty on all charges, except count four, the allegation appellant sodomized Tonya on Tuesday, February 18, 1986. The jury also found appellant did not use force or fear to get Tonya to orally copulate him that same Tuesday (count three).

Appellant contends there is no theory upon which he could properly be convicted of the substantive offenses imputed to him in counts seven, nine, eleven, thirteen, sixteen and eighteen. These counts involve the victim's acts

of prostitution with other men when Caine, but not appellant, was standing by.

He also contends the victim's testimony was inherently improbable, thereby rendering the evidence insufficient to support a finding that the victim submitted through force, violence, duress, menace or fear imposed by appellant.

Appellant challenges his consecutive sentences on counts two and five, seven and nine, ten and eleven, and sixteen and seventeen.

We find against appellant on all issues raised by him, except that we remand for resentencing as to counts eleven and fifteen because those sentences are proscribed by section 654.

PARTS I, II*

. . . . . . . . . . . . . . . . . . . . . .

PART III

*Appellant Was Properly Given Consecutive Sentences on Counts Two and Five, Seven and Nine, Eleven and Sixteen and Seventeen Pursuant to Section 667.6, Subdivision (b)*

The Legislature has established a special sentencing scheme for multiple sexual offenses. Section 667.6, subdivision (c) provides that generally the court has discretion to impose full, separate, and consecutive terms "whether or not the crimes were committed during a single transaction." Subdivision (d), by contrast, provides that the court is without discretion in the matter, but must impose full, separate, and consecutive terms "if the crimes involve separate victims or involve the same victim on separate occasions."[10]

At the instant sentencing, the court did not explicitly state which scheme it was using to sentence appellant. It stated only: "I find as to all counts that

---

* See footnote, *ante,* page 860.

[10]Section 667.6, subdivision (d) provides in part: "A full, separate, and consecutive term shall be served for each violation of subdivision (2) or (3) of Section 261, Section 264.1, subdivision (b) of Section 288, Section 289, or of committing sodomy or oral copulation in violation of Section 286 or 288a by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person if the crimes involve separate victims or involve the same victim on separate occasions."

are running consecutive that the reason they are running consecutive is that they specifically involved different acts and different times and different places."

If this was a sentence pursuant to subdivision (c) of section 667.6, it was improper as it did not provide a sufficient statement of reasons. ■ The Supreme Court has held that a separate statement of reasons justifying full-term consecutive sentencing under subdivision (c) must be given, though the reasons do not have to necessarily be different than those used to justify the imposition of consecutive sentences under section 1170.1. (*People* v. *Belmontes* (1983) 34 Cal.3d 335, 347-348 [193 Cal.Rptr. 882, 667 P.2d 686].) The instant court did not comply with this rule as it failed to make a record showing its reasons for the "separate and additional choice in sentencing under section 667.6, subdivision (c)." (*Id.* at p. 348, fn. omitted.)

However, each party to this appeal states the court intended the sentence to be pursuant to subdivision (d). We find that position reasonable, and our discussion will be based on that premise. Given this, appellant contends consecutive sentences on counts two and five, seven and nine, ten and eleven, and sixteen and seventeen, were improper because the crimes at issue did not occur on "separate occasions" as that term was defined in *People* v. *Craft* (1986) 41 Cal.3d 554 [224 Cal.Rptr. 626, 715 P.2d 585]. In *Craft,* the victim was driving alone one morning and stopped at a drive-in restaurant to use the restroom. As she returned to her car, defendant seized her from behind, threw her to the ground, and raped her. He then ordered her into the back seat of her car and drove away. While driving, he repeatedly struck her with his fist. After about an hour, he stopped the car, climbed into the back seat, and raped her again. He resumed driving, but stopped after 20 minutes to lock her in the trunk of her car. Again he resumed driving. About an hour later he stopped and left the car for some five minutes. He returned, drove once more, stopped, opened the trunk, and there raped her for the third time. He then abandoned the car and victim. The Supreme Court ruled that if the lower court's imposition of consecutive sentences for the three rape convictions was pursuant to subdivision (d), such a sentence was improper because the rapes occurred on but one "occasion": "[W]e hold that subdivision (d) only applies to offenses against the same victim between which the perpetrator temporarily lost or abandoned the opportunity to continue his attack: such opportunity is lost when the victim becomes free of any ongoing criminal activity; it is abandoned when the offender keeps the victim within his control but engages in some significant activity unrelated to continuing his attack." (*Id.* at p. 561.) The court also stated its belief that an attacker who discontinues an act, and,

allowing time for reflection, subsequently instigates another offense, deserves harsher punishment than one who perpetrates several offenses in one "uninterrupted sequence of events." (*People* v. *Craft, supra,* 41 Cal.3d at pp. 560-561.)

■ Keeping in mind the conspiracy conviction and the law regarding one who aids and abets the commission of a crime by another person, we find subdivision (d) was properly applied to counts two and five, seven and nine, eleven, and sixteen and seventeen. The first rape by appellant, described in count two, and the oral copulation by Caine, described in count five, were clearly on separate occasions, being separated by two days, during which appellant was engaged in many unrelated activities. Likewise, there was a substantial time separation of the acts at the trailer where Tonya had sexual intercourse with a single man (count seven) and her later sexual activity with 14 men at a labor camp (count nine). Tonya was free of criminal activity between the two occasions, and these episodes were separated in time, place and circumstances. There was also a substantial time period between Tonya's sexual acts at the labor camp on February 22, as charged in count sixteen, and appellant's personal rape of her at the motel on that date as charged in count seventeen. Furthermore, the circumstances of the latter two offenses are completely different, as well as the offense charged. In one, appellant aids and abets to get money. In the other, he personally committed the act for his own physical satisfaction. The rape and acts at the labor camp cannot be regarded as less than separate occasions.

Though the record is unclear as to which of the fifteen acts of sexual intercourse, which occurred on February 19, counts seven and nine apply, the fact remains that Tonya was first taken to the trailer location where she had sexual intercourse with a single man. Later on she was taken to the labor camp where she had sexual intercourse with the 14 laborers. This latter activity only resulted in one count, that being count nine. We believe these two events clearly involve the same victim on separate occasions as contemplated in section 667.6, subdivision (d). Appellant aided and abetted at least two men at different times and places in violating section 288, subdivision (b), on February 19. In this regard, we note appellant did not raise the issue of unanimous election of a particular act as to counts seven and nine or as to any other count. We also note the court did instruct in the language of CALJIC No. 4.71.5 and 17.02. The first specifically dealt with the numerous counts of section 288, subdivision (b) committed over several days and the consequent need for unanimity of agreement as to commission of a specific act. The second instruction deals with the jury's duty to consider each count separately.

For some inexplicable reason appellant and respondent both overlooked the fact procuring, as charged in count ten (§ 266j) is not one of the crimes described in section 667.6, subdivision (c) or (d) for which an offender can receive a full, separate and consecutive term. As a matter of fact, the court did not impose such a section 667.6 sentence. The midterm was chosen as to count ten, and it was made the base term. Other terms ran consecutive to it. Count eleven is, therefore, isolated as a separate section 667.6, subdivision (d) offense occurring on February 20. No other full, separate, consecutive term was imposed for an offense committed that day which came within the terms of section 667.6, subdivision (c) or (d). The violation of section 288, subdivision (b) on February 20, as charged in count eleven, was on a separate occasion from all other crimes for which section 667.6 sentences were imposed. It involved one of the crimes listed in subdivision (d) which are committed upon the body of the victim. Section 266j is not such a crime.

However, we will find that a separate term under count eleven is proscribed by section 654. "Although subdivision (c) [of § 667.6] allows separate punishment for crimes 'committed during a single transaction,' it does not affect section 654, which prohibits multiple punishment under different code provisions for a single 'act or omission.'" (*People* v. *Craft, supra,* 41 Cal.3d at p. 559, fn. 2.) We do not perceive of any reason why subdivision (d) should result in a different rule, though we recognize that ordinarily section 654 would not be applicable in section 667.6, subdivision (d) cases because offenses do not come within subdivision (d) unless they involve separate victims or the same victim on separate occasions. It is the conjunction of the section 266j offenses and section 288, subdivision (b) offenses that makes the difference here. We will discuss this more fully below.

We conclude appellant was properly sentenced pursuant to section 667.6, subdivision (d) as to counts two and five, seven and nine, eleven, and sixteen and seventeen.

## Part IV

*Appellant's Consecutive Sentences Under Counts Ten and Eleven Violated Penal Code Section 654, As Did the Concurrent Sentence Under Count Fifteen*

Penal Code section 654 provides that: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other."

██ In the instant case, appellant was convicted on count ten of the information for violating section 266j (procurement of a child under the age of 14 for lewd and lascivious acts)[11] on or about February 20, 1986. Appellant was convicted on count eleven of violating section 288, subdivision (b) on or about the same day. The count eleven conviction was on a complicity theory, and appellant claims the "procurement" under count ten was the "aiding and abetting" on which the count eleven conviction was based. Therefore, he argues, imposition of consecutive sentences on those counts is double punishment for the same act and violative of section 654.

There is merit to appellant's contention. Section 654 in the sexual offense area means that the prohibition against double punishment will apply when one offense is committed as a means of committing another, facilitates commission of any other, or is incidental to commission of any other. (*People* v. *Perez* (1979) 23 Cal.3d 545, 553-554 [153 Cal.Rptr. 40, 591 P.2d 63].) Certainly appellant's violation of section 266j in procuring Tonya for lewd acts can be seen as facilitating the commission of those lewd acts by others in violation of section 288, subdivision (b). In fact the laborers would not have had the opportunity to commit those acts on Tonya had appellant not provided Tonya for them.

Respondent contends section 654 does not apply because there were actually three or four lewd acts committed upon Tonya on February 20 which could have been the basis for count eleven, hence the act of making Tonya available for a lewd act as charged in count ten did not necessarily precede the actual lewd act charged in count eleven. This argument fails. As appellant correctly notes, there is no concrete basis in the record for establishing that the act of making Tonya available for a lewd act as charged in count ten did not necessarily precede and make possible the lewd act charged in count eleven. Although respondent correctly states the jury, as instructed by CALJIC No. 4.71.5, was not required to state in the verdict the particular act or acts they agreed were committed, this instruction does not help avoid the section 654 issue as respondent contends. The jury may well have decided appellant was guilty on count ten for procuring Tonya for a certain laborer, and also decided the section 288, subdivision (b) violation alleged in count eleven was committed by the same laborer. Such a situation is the strongest case for holding the violation of section 266j was to facilitate the commission of the lewd act, and that punishment on both crimes would

---

[11] Section 266j provided at the time of trial: "Any person who intentionally gives, transports, provides, or makes available, or who offers to give, transport, provide, or make available to another person, a child under the age of 14 for the purpose of any lewd or lascivious act as defined in Section 288, or who causes, induces, or persuades a child under the age of 14 to engage in such an act with another person, is guilty of a felony and shall be imprisoned in the state prison for a term of three, six, or eight years."

be double punishment for the same act. In any event, this court cannot rest its holding on the guess that the laborer who committed the lewd act charged in count eleven was a different laborer than the one for whom Tonya was provided as charged in count ten.

The same reasoning applies to count fifteen which runs concurrently rather than being stayed as were the other section 266j counts excepting count ten. Appellant was given a consecutive sentence on count sixteen to which count fifteen related. Count fifteen should have been stayed. A concurrent sentence does not satisfy the requirement of section 654. (*People* v. *Miller* (1977) 18 Cal.3d 873, 886-887 [135 Cal.Rptr. 654, 558 P.2d 552].) We so hold even though appellant did not challenge his concurrent sentence under count fifteen.

The case is remanded to the trial court for resentencing on counts eleven and fifteen in accordance with the views expressed herein; in all other respects the judgment is affirmed.

Woolpert, Acting P. J., and Ballantyne, J., concurred.

On March 17, 1988, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied May 18, 1988.