Filed 4/21/15  P. v. Garcia CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E061231 |
| v. | (Super.Ct.No. BAF1300764) |
| ARON GARCIA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Jean P. Leonard, Judge.

Affirmed with directions.

John L. Dodd, under appointment by the Court of Appeal, for Defendant and

Appellant.

Kamala D. Harris, Attorney General, Gerald Engler, Chief Assistant Attorney

General, Julie L. Garland, Senior Assistant Attorney General, Arlene A. Sevidal, and

Amanda E. Casillas, Deputy Attorneys General, for Plaintiff and Respondent.

# I

## INTRODUCTION

On January 24, 2014, a first amended information alleged that defendant and appellant Aron Garcia had committed the following offenses: manufacture, import, sale, supply or possession of a short-barreled shotgun under Penal Code[1] section 33215 (count 1); felon in possession of a firearm under section 29800, subdivision (a)(1) (counts 2, 4); and possession of ammunition by a person prohibited from owning and possessing a firearm under section 30305, subdivision (a) (count 3). The information also alleged four prior felony convictions within the meaning of section 667.5, subdivision (b), and a serious and violent prior felony conviction within the meaning of sections 667, subdivisions (c) and (e)(1), and 1170.12, subdivision (c)(1).

A jury trial commenced on March 11, 2014. On March 17, 2014, the jury found defendant guilty on all four counts. The prosecution then dismissed the first alleged section 667.5, subdivision (b), prior, and defendant admitted the remaining three section 667.5, subdivision (b), priors, as well as the strike prior.

---

[1] All statutory references are to the Penal Code unless otherwise specified.

On May 23, 2014, the trial court denied defendant's *Romero*[2] motion to dismiss his strike prior, and sentenced defendant to a total term of nine years and eight months as follows: the mid-term of four years for count 1 (two years doubled), deemed the principal count; one-third the mid-term of one year and four months (eight months doubled) for count 2, to be served consecutively to count 1; one-third the mid-term of one year and four months (eight months doubled) for count 3, to be served consecutively to count 2; one-third the mid-term of one year and four months (eight months doubled) for count 4, stayed under section 654; and one year for each of the three section 667.5, subdivision (b), priors.

On appeal, defendant contends that the trial court erred in failing to stay the sentence on count 3, possession of ammunition, because it was part and parcel of possessing firearms. For the reasons set forth below, we stay defendant's sentence under section 654 for possession of ammunition by a person prohibited from owning and possessing a firearm under section 30305, subdivision (a) (count 3), but otherwise affirm the judgment.

---

[2] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

## II

## STATEMENT OF FACTS

On the evening of November 2, 2013, Officer Frederick Steward, a patrol officer for the Beaumont Police Department, was on duty. He was ready to make a left-hand turn from Beaumont Avenue onto 5th Street. Before turning, the officer saw a brown Ford Taurus making a right-hand turn onto 5th Street from the opposite direction. Officer Steward followed the Taurus for about two blocks when the Taurus abruptly pulled over.

Officer Steward saw the two individuals from the Ford Taurus at the front door of the apartment building near which the Taurus had parked. He turned on his side spotlight, illuminating the two individuals, who were looking at him. Defendant was one of the two individuals. The officer continued driving to the next intersection and requested backup. When he made a U-turn and returned to the apartment, the two individuals were gone. Officer Steward waited for backup while he watched the front door of the apartment.

When other officers arrived, they set up a perimeter. Officer Steward walked to the front of the apartment, shining his flashlight around to make sure nobody was hiding. Next to the front door was a white trash can. There, the officer saw a shotgun, which was approximately 15 inches in length. The shotgun was loaded and appeared capable of being used.

Officer Steward picked up the trash can, returned to his vehicle, and advised the other officers he had found a gun. The officers began giving a "surrounding callout"

4

every 20 to 30 seconds, announcing on the loudspeaker for the occupants to come out with their hands up. After repeating this for an hour, nobody came out of the building. Officer Steward approached the Taurus, shining his flashlight through the driver's side front door window. Inside, in the passenger's side door handle area, he saw a gun.

Officer Steward left the scene, changed into plain clothes, and drove an undercover police car to stake out the location while the other officers left. Within 10 minutes, the officer saw two individuals on the front grass area between the Taurus and the apartment. The officer called for backup to return. After a few minutes, the two individuals walked across the street and went into the trailer park.

Officer Alejandro Marquez parked his vehicle in an alley in between two trailers. He saw defendant coming out of a shed. With his gun drawn, Officer Marquez ordered defendant to lie on the ground about three or four times. Defendant got on the ground but "kept looking back" over his left shoulder in the direction of the shed. After handcuffing defendant, the officer found a set of car keys in defendant's right pants pocket. These keys successfully started the Taurus. The officer then searched the shed, finding a loaded magazine sitting inside on a shelf. The magazine fit into the nine-millimeter handgun found in the Taurus.

Officer Steward had the Taurus towed to the police station. After seizing the gun, he found that the gun was loaded. The gun appeared capable of being used.

# III

## ANALYSIS

Defendant claims that his sentence on count 3 must be stayed under section 654 because possession of the firearms and ammunition was part and parcel of an indivisible course of conduct.

Section 654, subdivision (a), as relevant here, provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."

"The test for determining whether section 654 prohibits multiple punishment has long been established: 'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. . . .' [Citation.]" (*People v. Britt* (2004) 32 Cal.4th 944, 951-952.) "[I]f all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once. [Citation.] [¶] If, on the other hand, defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.'" (*People v. Harrison* (1989) 48 Cal.3d 321, 335.)

6

"'A trial court's implied finding that a defendant harbored a separate intent and objective for each offense will be upheld on appeal if it is supported by substantial evidence.' [Citation.]" (*People v. Racy* (2007) 148 Cal.App.4th 1327, 1336-1337.)

In *People v. Lopez* (2004) 119 Cal.App.4th 132, the defendant was found in possession of a loaded handgun. (*Id*. at p. 135.) As a result, he was convicted of both unlawful possession of a firearm and unlawful possession of ammunition. (*Id*. at p. 134.) The appellate court held that he could not be sentenced for both: "Appellant's obvious intent was to possess a loaded firearm. [¶] In resolving section 654 issues, our California Supreme Court has recently stated that the appellate courts should not 'parse[] the objectives too finely.' [Citation.] To allow multiple punishment for possessing ammunition in a firearm would, in our judgment, parse the objectives too finely. While there may be instances when multiple punishment is lawful for possession of a firearm and ammunition, the instant case is not one of them. Where, as here, all of the ammunition is loaded into the firearm, an 'indivisible course of conduct' is present and section 654 precludes multiple punishment." (*Id*. at p. 138.)

In *People v. Sok* (2010) 181 Cal.App.4th 88, the defendant fired shots at a vehicle and later at a residence. (*Id.* at p. 91.) Officers searched the defendant's car and found a loaded nine-millimeter Glock pistol in the trunk. "[B]ased on bullet casings recovered from each of the crime scenes, the bullets fired in both incidents came from" the gun found in defendant's car. (*Ibid.*) The defendant was convicted of two unlawful firearm possession counts and two unlawful ammunition possession counts. (*Id.* at p. 100.) The

7

court imposed concurrent two-year sentences for each of the two unlawful firearm possession counts and two unlawful ammunition possession counts. (*Id.* at p. 93.) After noting that the Attorney General had conceded the issue, the appellate court stated that the trial court erred in failing to stay the sentences for the two unlawful ammunition possession counts under section 654, because:

"[T]he ammunition at issue in those two counts was either loaded into [the defendant's] handgun or had been fired from that gun. There is no evidence in the record that would support the trial court's implied factual finding that [the defendant] had different or multiple objectives in possessing the loaded firearm and possessing the ammunition in the gun itself." (*People v. Sok*, *supra*, 181 Cal.App.4th at p. 100, fn. omitted.)

In this case, defendant was convicted for possession of a handgun, possession of a shotgun, and possession of ammunition. As to count 3, possession of ammunition, the People argued that defendant committed three alternative acts, *any* of which could form the basis of the verdict on count 3: (1) possession of the ammunition in the loaded handgun found in the Taurus; (2) possession of the ammunition in the loaded shotgun; or (3) possession of the magazine found inside the shed. In order to find defendant guilty of count 3, possession of ammunition, the jury was instructed that it must agree that defendant committed at least *one* of those acts, and further that it must agree which act defendant committed. Although the jury found defendant guilty of count 3, there is nothing on the record to indicate which theory formed the basis of the conviction.

8

*People v. Roberson* (1988) 198 Cal.App.3d 860 (*Roberson*) is instructive. In *Roberson*, the defendant was convicted of a count of procurement of a child for lewd and lascivious acts under section 266j (count 10), and a count of lewd and lascivious acts involving children under section 288, subdivision (b), on the same day (count 11). (*Id.* at p. 871.) The trial court imposed consecutive sentences for the two counts, which the defendant challenged on appeal as a violation of section 654. The People, however, argued that section 654 did not apply "because there were actually three or four lewd acts committed upon [the victim] on February 20 which could have been the basis for count 11." (*Ibid.*) The appellate court disagreed, and noted:

"[T]here is no concrete basis in the record for establishing that the act of making [the victim] available for a lewd act as charged in count ten did not necessarily precede and make possible the lewd act charged in count eleven. Although . . . the jury . . . was not required to state in the verdict the particular act or acts they agreed were committed, this . . . does not help avoid the section 654 issue . . . . The jury may well have decided appellant was guilty on count ten for procuring [the victim] for a certain laborer, and also decided the section 288, subdivision (b) violation alleged in count eleven was committed by the same laborer. Such a situation is the strongest case for holding the violation of section 266j was to facilitate the commission of the lewd act, and that punishment on both crimes would be double punishment for the same act. In any event, this court cannot rest its holding on the guess that the laborer who committed the lewd act charged in count

9

eleven was a different laborer than the one for whom [the victim] was provided as charged in count ten." (*Roberson*, *supra*, 198 Cal.App.3d at pp. 871-872.)

This case is similar. Here, too, because the jury's verdict form did not indicate which act of ammunition possession it agreed defendant committed, we "cannot rest [our] holding on the guess that" the jury agreed that the magazine found in the shed formed the basis for count 3. (*Roberson*, *supra*, 198 Cal.App.3d at p. 872.) In fact, it is more probable, just like the case in *Roberson*, that the jury based its verdict of possession of ammunition based on the first two acts – by possessing the loaded shotgun and handgun. This point was reiterated during closing argument by the prosecutor, who made the following argument to the jury:

"The issue is, did [defendant] possess the ammunition, and did he know he possessed it. Well, of course he did. He possessed that gun. We already talked about that, that handgun that was inside the Taurus, and that it was loaded. That's possession of ammunition right there. Same way he has possession over that gun, he also has possession over the ammunition inside that gun. But there's more than that even. Remember the shotgun. The shotgun was loaded too. That shotgun shell, that counts. So if you find he was in possession of that shotgun, he was in possession of that ammunition inside of that shotgun too."

Here, the jury did find that defendant possessed the shotgun and handgun. Therefore, following the prosecutor's reasoning, the jury would have found that defendant possessed ammunition simply based on his possession of the loaded shotgun

10

and handgun.  Based on this, there is no factual distinction between this case and the two cases discussed above, *People v. Lopez*, *supra*, 119 Cal.App.4th 132, and *People v. Sok*, *supra*, 181 Cal.App.4th 88.  There is no evidence in the record that would support a finding that defendant had different or multiple objectives in possessing the loaded firearms and possessing the guns themselves.  Defendant's sole intent was to possess the loaded firearms, which contained the ammunition.

As to the third alleged act – the magazine found in the shed – even if the jury based the verdict on this act, there was nothing in the record to support a finding that defendant had different or multiple objectives in possessing the loaded handgun and possessing the magazine which belonged to the handgun.

The People ignore *Roberson*, *supra*, 198 Cal.App.3d 860, in their respondent's brief.  Instead, the People argue that the conviction for possession of ammunition does not need to be stayed because "all of the ammunition was *not* loaded into a firearm.  Rather, a loaded magazine was found on a shelf in an outdoor shed, while the matching gun was found in the passenger's side door handle of [defendant's] Ford Taurus and another loaded shotgun was found outside of a nearby home."  However, as discussed above, the prosecutor's argument to the jury made it impossible to find defendant not guilty of count 3 if the jury found defendant guilty of possessing the loaded shotgun or loaded firearm.  The case cited by the People in support of its argument, *People v. Wasley* (1966) 245 Cal.App.2d 383 (*Wasley*), is distinguishable.

11

In *Wasley*, officers searching the defendant's car found both a sawed-off shotgun and a pistol. (*Wasley*, *supra*, 245 Cal.App.2d at pp. 385-386.) The appellate court held that the defendant could be separately punished because the record did not present a suggestion of any single intent to possess two different weapons. (*Id.* at p. 387.) The court explained that the weapons "were carried in distinct sections of the automobile. Their possession was proscribed by separate statutes, serving distinct public purposes. The fact that they were possessed at the same time by one man does not reduce that possession to a single act or a single course of conduct." (*Ibid.*) We agree with the holding in *Wasley* but find it inapplicable to defendant's argument in this case. Here, defendant is not arguing that he should not be sentenced consecutively for possessing two different weapons at the same time. Instead, the argument is that defendant cannot be punished separately for possessing ammunition that was either in the shotgun and handgun, or could be used with one of the firearms. *Wasley*, therefore, does not support the People's argument.

Notwithstanding, we note that *People v. McCoy* (2012) 208 Cal.App.4th. 1333 (*McCoy*) disagreed with *Roberson*, *supra*, 198 Cal.App.3d 860. In *McCoy*, the defendant was convicted of burglary, sexual assault, and violating a restraining order, when he went to the victim's residence, broke in, and sexually assaulted her. The defendant contended that, because of the way the offenses were charged, there was no jury finding that the violation of the restraining order occurred on a separate occasion from the other crimes. The trial court imposed punishment for the violation of the restraining order, as well as

12

for the other crimes, despite section 654; the evidence suggested that defendant may have made more than one entry into the victim's residence, and either entry would support a conviction for violation of the restraining order.  Defendant objected that, because there was no *jury* finding for which entry was the basis for the conviction of violating a protective order (or, indeed, whether there had actually been more than one entry), the trial court could not make an independent finding that there was a separate entry upon which to base separate punishment—i.e., that section 654 did not apply.  (*Id.* at pp. 1337-1338.)

The *McCoy* court held that a trial court in its sentencing discretion may base its decision on *any* facts that are in evidence at trial, without regard to the verdicts, unless some circumstance in those verdicts forecloses the trial court from doing so.  In *People v. Siko* (1988) 45 Cal.3d 820, for example, both the charging document and the verdicts had specified two particular sex offenses as the basis for generic charges of lewd and lascivious conduct.  Neither the closing argument nor the instructions had suggested any other basis for the molestation counts.  (*Id.* at p. 826.)  "*Siko* is thus authority that where there is a basis for identifying the specific factual basis for a verdict, a trial court cannot find otherwise in applying section 654."  (*McCoy, supra*, 208 Cal.App.4th at p. 1339.)

Where there is not a basis for identifying the specific factual basis for a verdict, however, the trial court is not foreclosed from considering all the available evidence in making its decision under section 654.  The *McCoy* court analyzed additional cases:

"The defendant in *People v. Centers* (1999) 73 Cal.App.4th 84 [86 Cal.Rptr.2d 151] entered a house with a gun. Three people were inside. He kidnapped one of them. The jury convicted him inter alia of kidnapping, and of a single count of burglary with a firearm use enhancement. [Citation.] *Centers* noted that neither the information nor the verdicts specified a particular victim of the burglary and its firearm use enhancement. [Citation.] In that circumstance, 'the trial court is entitled to make any necessary factual findings *not already made by the jury*' . . . and thus 'could properly find multiple victims' (a finding for which there was substantial evidence) and impose punishment for the burglary and enhancement in connection with one of the occupants of the apartment as well as the kidnapping of the other [citation]. (*McCoy, supra*, 208 Cal.App.4th at pp. 1339-1340.)

*People v. Bradley* (2003) 111 Cal.App.4th 765 *(Bradley)* and *People v. Nguyen* (1988) 204 Cal.App.3d 181 *(Nguyen)*, both dealt with punishment of an accomplice for a robbery and an attempted murder in the course of the robbery. In *Nguyen*, the accomplice not only aided the commission of the robbery but also abetted the shooting of the victim (shouting words of encouragement). Because the verdicts 'in no manner *foreclosed*' the conclusion that the accomplice had developed an independent purpose of shooting the victim, which the evidence supported, it was proper for the trial court to impose sentence on both convictions. (*Nguyen*, at pp. 189-190, italics added.) In *Bradley*, however, the shooting was prosecuted solely as a natural and probable consequence of the robbery (the only crime the accomplice apparently intended); given the theory of the instructions

14

underlying the verdict and the absence of substantial evidence of an independent purpose, the trial court could not properly impose sentence on both under section 654. (*Bradley,* at pp. 767, 769-770, 772 [on this basis distinguishing *Nguyen*].)

"The gist of these cases . . . is that in the absence of some circumstance 'foreclosing' its sentencing discretion (as in *Siko* and *Bradley*), a trial court may base its decision under section 654 on *any* of the facts that are in evidence at trial, without regard to the verdicts." (*McCoy, supra*, 208 Cal.App.4th 1333, 1340.)

Here, unlike the facts in *McCoy*, *supra*, 208 Cal.App.4th 1333, the manner in which the case was charged and tried, and the argument of the prosecutor did foreclose the trial court from considering all the evidence adduced at trial to make its sentencing decision under 654. Here, as discussed above, the prosecutor specifically argued that the jury would have to find that defendant possessed ammunition if the jury simply found that defendant possessed the loaded firearm and shotgun. In this case, the jury did in fact find defendant guilty of possessing both the loaded firearm and shotgun. Hence, under the prosecution's theory, the jury automatically had to find defendant guilty of possession of ammunition.

Based on the above, we find that the trial court erred in failing to stay the sentence on possession of ammunition under section 654.

15

IV

DISPOSITION

Defendant's sentence for count 3, possession of ammunition by a person prohibited from owning and possessing a firearm under section 30305, subdivision (a), is modified to reflect the sentence is stayed pursuant to section 654. The trial court is directed to prepare an amended abstract of judgment and to forward a certified copy to the Department of Corrections and Rehabilitation. (§§ 1213, 1216.) In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER

J.

We concur:

RAMIREZ

P. J.

KING

J.