Filed 4/14/21  P. v. Johnson CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>AARON LAMONT JOHNSON,<br><br>    Defendant and Appellant. | B305268<br><br>(Los Angeles County<br>Super. Ct. No. BA476571) |


APPEAL from a judgment of the Superior Court of Los Angeles County, James R. Dabney, Judge.  Affirmed in part and remanded for resentencing.

David M. Thompson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, and Rene Judkiewicz, Deputy Attorney General, for Plaintiff and Respondent.

_____

A jury convicted Aaron Lamont Johnson of six felonies including forcible rape, trafficking, and pandering of a minor. We direct the trial court to stay the pandering sentence under section 654 and to correct the restitution amount. We otherwise affirm.

All undesignated statutory references are to the Penal Code.

I

An information charged Johnson with forcible human trafficking of a minor for a commercial sex act (§ 236.1, subd. (c)(2)) (count 1); pandering by encouraging a minor over age 16 to be a prostitute (§ 266i, subd. (b)(1)) (count 2); unlawful sexual intercourse with a minor (§ 261.5, subd. (c)) (count 3); oral copulation of a person under age 18 (§ 287, subd. (b)(1)) (count 4); aggravated mayhem (§ 205) (count 5); forcible rape of a child victim over age 14 (§ 261, subd. (a)(2)) (count 6); forcible oral copulation of a minor over age 14 (§ 287, subd. (c)(2)(C)) (count 7); human trafficking to commit another crime (§ 236.1, subd. (b)) (count 8); and pimping (§ 266h, subd. (a)) (count 9). The first seven counts were for Johnson's actions against India R. Counts 8 and 9 were for Johnson's actions against Oshae H.

There were five days of trial testimony. The prosecution called India, Johnson's sister, two motel managers, a nurse from a rape treatment center, a criminalist, and four police officers. Johnson testified for the defense.

We begin by summarizing pertinent facts from India's testimony.

In September 2018, Johnson first had sexual intercourse with India, who was 16 years old. A few days later, India began working for Johnson as a commercial sex worker.

The first week India worked for Johnson, she worked after school let out; she was a 10th grader. Then she worked weekends. She returned home during the week to live with her mom and grandma and to attend school.

Beginning in November 2018, Johnson became violent with India. The first time, Johnson whipped her legs with a belt. He whipped her with a belt on at least four other occasions. He also hit her with his hands. He caused bruises. Johnson hit India if she did not follow "basic pimping hoeing rules," like if she "talk[ed] too much."

In December 2018, India stopped living with her mother and grandmother. She explained, "I couldn't go home with bruises." India stopped attending school and began doing commercial sex work for Johnson "full-time."

Between December 2018 and March 2019, Johnson hit India with his hand "mostly every day or every two days." India also saw Johnson hit Oshae, another person who performed commercial sex work for Johnson. (At trial, witnesses and attorneys sometimes called Oshae "Alaza." We use "Oshae" because India testified that was Oshae's "true given first name.") India saw Johnson whip Oshae with a belt. India also saw him hit Oshae with his hands every couple days.

Johnson's violence made India afraid of him. She said, "I would just try to make sure I said everything right. Or whatever he asked for, I did." She did this to avoid being beaten. Johnson continued physically abusing her.

India tried to leave Johnson and return to her family but he stopped her from leaving. He hit her when she told him she wanted to leave. India's family members called and told Johnson to let India come home but he did not let her go home. Her

family members told Johnson India was only 16.  Johnson called India a "stupid ass minor."

India and Johnson engaged in sexual activity, including sexual intercourse and oral sex, many times.  The prosecutor asked India about Johnson's violence and these sex acts:

"Q:  When the defendant was hitting you either every day or every other day, did he ever engage in a sex act with you after hitting you?

"A:  Yes.

"Q:  Okay.  And you said that when he would strike you or hit you, that would cause you to be afraid?

"A:  Yes.

"Q:  Okay.  On the occasions where the defendant would be physically violent with you and then engage in sex acts with you, is that something you wanted to do, this sex act?

"A:  No.  It was only basically to make him happy or make him not get mad at me.

"Q:  So if I understand you correctly, you would simply submit to it and let it happen because you were—you didn't want him to get mad which would result in him being violent?

"A:  Yes."

On cross-examination, Johnson asked India whether Johnson ever "force[d]" her to perform oral sex on Johnson.  India said "no."  He did not ask India whether Johnson ever forced her to have sexual intercourse with him.

While India was working for Johnson, he brought up the idea of tattooing his "pimp moniker," which was "Sayless," on her.  India agreed to get the tattoo because if she refused, "[h]e would have argued, picked an argument with me, and he would have hit

4

me." Johnson's friend tattooed the moniker on India's face near her left ear.

One day in early March 2019, India and Johnson were sitting in a parked car outside a motel room. Oshae was in the room. India and Johnson started arguing. India told Johnson she wished she had never started working for him. Johnson grabbed India by the hair and dragged her into the motel room. India pleaded with him to stop. India was on the ground in the corner of the room. Johnson removed his belt and whipped her for about 20 minutes. India screamed and cried. She tried to get up to defend herself, but Johnson hit her eye and she fell back to the ground.

Oshae told Johnson to stop. He flipped Oshae on the bed and hit her with the belt multiple times.

Eventually, Johnson stopped and left. India sat on stairs outside of the room.

Johnson returned and called India a "dumb bitch." They went back inside the room. India said, "it was calm. I was just numb, like, I didn't say anything because that's what I do, like after a while, after everything happen, I just be silent. [¶] So he just kept going. Oh, you know—I just started picking up—he threw me, all of our stuff across the room. So I just started picking up our stuff. [¶] And that's all that happened that night."

The prosecutor and India had the following exchange:

"Q: At any time during this—either during or shortly after this whipping with the belt, did the defendant do any sex acts to your body?

"A: Yes.

"Q: After you received this 20-minute whipping with this belt, did you want to have sex with the defendant?

"A: Every time it just—yes. Because I didn't want to make him mad again."

Two days after that, India "came back from working and so he asked me to did [*sic*] we want to do it. And that's—we did it. We had sex." India said they had "regular sex," which she immediately clarified meant sexual intercourse, only. The prosecutor noted, "I can see from your demeanor and—that this is difficult subject matter for you to talk about." India agreed. India did not provide any other testimony about this instance of sexual intercourse.

Later during direct examination, the prosecutor asked India what specific sex acts Johnson did shortly after the whipping. India said, "He didn't do anything that day. I told you it was two days later."

India left Johnson on March 5, 2019. Johnson called India repeatedly after she left. India texted him, "I'm done. You keep hitting me. It's going to continue" and "I'm going back home."

Later that day, India went to a hospital, spoke to police, and went to a rape treatment center.

A nurse from the rape treatment center testified. She had performed a sexual assault examination on India. India told the nurse her "pimp," named "Aaron," had sexually assaulted her. He dragged her out of a car by her hair and forced her into a motel room. He hit her with a belt, slapped and hit her body, held her down with his body weight, and grabbed and pulled her hair during the sexual assault. According to the nurse, "[India] said that there was penetration of her vagina by the assailant's

6

penis.  She also said that the assailant forced his penis inside of her mouth . . . ."

During the exam, India had right and left lower leg pain, general body pain, and tenderness to the back of her head.  The nurse saw bruising on India's legs and cuts on her toes.  The prosecution played a video the nurse took of India's body, which showed bruises on both of India's thighs and abrasions on India's feet.  India told the nurse these injuries were new; she did not have them prior to the assault.  The nurse believed "India's history of the sexual assault and the physical assault as well as her physical examination were both consistent."

Johnson testified.  He was 25 years old.  He had "no confirmation" of India's age until he was arrested.  Johnson knew India was doing commercial sex work and he took the money she made from that work.  Johnson said he "never had to force [India] to do anything."  "She had a bunch of freedom."  The day before India left, Johnson said India was mad and she "knock[ed] down stands and dressers, and c[ame] towards me with her anger."  He denied dragging India by her hair and denied restraining her.  When his attorney asked whether he used a belt, Johnson replied, "No.  I didn't have to use my belt."

During closing argument, the prosecutor identified the alleged act of forcible rape as the incident when Johnson dragged India by the hair into the motel room.  The prosecutor said, "we're talking about the last couple days India was there."

The jury found Johnson guilty of count 1 (forcible human trafficking), count 2 (pandering), count 3 (unlawful sexual intercourse), count 4 (oral copulation of a person under age 18), count 6 (forcible rape), and count 9 (pimping).  It could not reach a verdict on the remaining three counts:  count 5 (aggravated

mayhem), count 7 (forcible oral copulation), and count 8 (human trafficking to commit another crime).

The court sentenced Johnson to a total of 27 years and four months to life in state prison. The sentence included consecutive terms of 15 years to life for count 1, 11 years for count 6, and one year and four months for count 9. It also included concurrent terms of six years for count 2, three years for count 3, and three years for count 4.

The court imposed fines and fees including a restitution fine (§ 1202.4, subd. (b)) and a stayed parole revocation fine (§ 1202.45).

## II

## A

Sufficient evidence supports Johnson's forcible rape conviction.

In reviewing claims of insufficiency of evidence, we must determine whether the record discloses evidence that is reasonable, credible, and of solid value such that a rational trier of fact could find the elements of the crime beyond a reasonable doubt. We review the record in the light most favorable to the judgment and presume in support of the judgment every fact the jury could reasonably deduce from the evidence. (*People v. Carter* (2005) 36 Cal.4th 1114, 1156.) This standard of review applies to claims involving both direct and circumstantial evidence. (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.)

We review the elements of forcible rape. Forcible rape is sexual intercourse "accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another." (§ 261, subd. (a)(2).)

Fear of immediate and unlawful bodily injury has a subjective component and an objective component.  The subjective component is about whether the victim genuinely entertained a fear of immediate and unlawful injury sufficient to induce submission to sexual intercourse.  (*People v. Iniguez* (1994) 7 Cal.4th 847, 856.)  Victims do not need to testify about what precisely they feared.  (*Id.* at p. 857.)  The objective component is about whether the victim's fear was reasonable under the circumstances.  (*Id.* at p. 856.)

Lack of consent is an element of forcible rape.  (*People v. Ireland* (2010) 188 Cal.App.4th 328, 336.)  Submitting to sexual demands out of fear of bodily injury is not consent.  (*Id.* at p. 336; see also *People v. Guldbrandsen* (1950) 35 Cal.2d 514, 520 [submission to sexual intercourse to save own life or to escape further beating would not constitute consent].)  "Consent induced by fear is no consent at all."  (*People v. Washington* (1962) 203 Cal.App.2d 609, 610.)  The victim need not resist the rapist to show lack of consent.  (*Ireland*, at p. 338.)

Substantial evidence shows Johnson forcibly raped India because she submitted to sex with Johnson out of fear of immediate and unlawful bodily injury.  India's age, her relationship with Johnson, and the specific events leading up to the sex act weigh in favor of this determination.

India was 16, nine years younger than Johnson.  Johnson's relationship to her was one of power and dominance.  Chief in our analysis is Johnson's pattern of physically abusing India.  India feared him because of this abuse.  To avoid his anger and violence, she tried to do whatever he asked of her, which included submitting to sex acts.  Johnson imposed his dominance in other ways.  He facilitated India's sex work and took the money she

made.  He had his name tattooed on her face.  He isolated India from her family.

Within the context of this relationship dynamic, "during or shortly after" an incident in which Johnson pulled India by the hair into a motel room and whipped her for 20 minutes, Johnson engaged in sex acts with India.  Johnson showed he would meet India's resistance with violence because when India had tried to stop him from whipping her, he hit her eye.  These facts provide evidence of India's subjective fear, a fear that was objectively reasonable.  A reasonable jury could find India submitted to sex with Johnson out of fear of imminent violence.

Johnson challenges the sufficiency of the evidence on three bases.  These arguments have no merit.

First, Johnson incorrectly says there is insufficient evidence of force, violence, or duress.  In his opening brief he says, with our italics, "India never testified that appellant beat her *during* any sex act that day."  India did not need to testify she was beaten during sex to prove forcible rape.  Placing India in fear of immediate bodily injury suffices and as we explained, substantial evidence supports this theory.  At any rate, the nurse provided evidence Johnson did use force during sex.  India told the nurse that Johnson hit India with a belt, slapped and hit her body, held her down with his body weight, and grabbed and pulled her hair *during* the sexual assault.  The nurse observed injuries on India's thighs that India did not have before the assault, which bolsters a finding that Johnson used physical force during the sex.  At minimum, Johnson placed India in fear of immediate and unlawful bodily injury and there was evidence of actual force, too.

10

Second, Johnson offers a related and unsound argument that there is no substantial evidence he had sexual intercourse with India after he whipped her for 20 minutes. The nurse's testimony, which was based on the nurse's experience with India close in time to the assault, refutes Johnson's argument. India told the nurse about an incident in which Johnson dragged India out of a car by her hair, forced her into a motel room, hit her with a belt, slapped and hit her body, held her down with his body weight, grabbed and pulled her hair, and penetrated India's vagina with his penis. This is evidence of forcible sexual intercourse.

Additionally, India testified that "during or shortly after" Johnson whipped her, Johnson committed "sex acts." She had provided general testimony that she and Johnson had sexual intercourse many times and she called sexual intercourse, "regular sex." Given the nurse's and India's testimony, a reasonable jury could find that Johnson had sexual intercourse with India.

Johnson points out that later in India's testimony, she said sex acts did not happen the day of the 20-minute whipping. This inconsistency is of no moment. Johnson neither asked about the inconsistency during cross-examination nor raised it during his closing argument. The parties seemed to attach little or no practical importance to it because the exact timing is legally irrelevant. The jury instruction includes no temporal element that would make India's inconsistency significant. The jury could reasonably believe India was in fear of immediate and unlawful bodily injury whether the interval between the whipping was two minutes or two days.

Johnson offers a third flawed argument that he reasonably believed India consented. While a defendant's reasonable and good faith mistaken belief in the victim's consent is a complete defense to the charge of rape (*People v. Mayberry* (1975) 15 Cal.3d 143, 153–158), the evidence does not support such a belief here. Johnson claims, "It would not be surprising that India may have even wanted to have sexual intercourse with appellant following a physical altercation as 'rough make-up sex' considering her decision to become a prostitute engaging in multiple sexual escapades on a daily basis with strangers and her engaging with sexual acts with [Johnson] even prior to working for him." Johnson's argument is unreasonable. Johnson urges us to infer commercial sex workers can never convincingly refuse to consent. This is wrong and offensive.

Substantial evidence supports Johnson's forcible rape conviction.

## B

Section 654 bars multiple punishment for Johnson's human trafficking and pandering convictions because the offenses were part of a course of conduct that shared the same objective—to have India perform commercial sex work for Johnson's financial gain. (See *People v. Goode* (2015) 243 Cal.App.4th 484, 492.)

Section 654's prohibition against multiple punishment does not apply if a defendant has a separate objective for each crime. The question of whether a defendant had a single objective is "generally a factual one." (*People v. Harrison* (1989) 48 Cal.3d 321, 335.) We uphold the trial court's explicit or implicit factual findings about a defendant's objectives if the findings are supported by substantial evidence. (*People v. Osband* (1996) 13 Cal.4th 622, 730–731.)

12

The court sentenced Johnson to concurrent sentences of 15 years to life for count 1, forcible human trafficking of a minor (§ 236.1, subd. (c)(2)) and six years for count 2, pandering by encouraging a minor to be a prostitute (§ 266i, subd. (b)(1).)

The human trafficking statute provides in pertinent part that someone "who causes, induces, or persuades, or attempts to cause, induce, or persuade" a minor "to engage in a commercial sex act, with the intent to effect or maintain a violation of Section . . . 266i . . . is guilty of human trafficking." (§ 236.1, subd. (c).) Section 266i codifies pandering, the crime in count 2. Pandering is a felony offense if the offender "[p]rocures another person for the purpose of prostitution." (§ 266i, subd. (a)(1).)

During sentencing, the court said it would not stay the sentence under section 654 because "there was a question of whether she was induced prior to the acts. There's an argument to be made. Doesn't matter because I'm going to run them concurrent anyway."

The court should have stayed the sentencing for the pandering offense. The People concede this. The trial court's implicit factual finding that the two charges had different objectives is not supported by substantial evidence. The trial court seemed to mistakenly think section 654 did not apply because the pandering may have occurred before the human trafficking. This explanation does not support the court's decision to impose a concurrent sentence. The two offenses had the same objective, to have India work as a prostitute for Johnson's financial gain, therefore section 654 applied. In a case involving multiple sex offenses, section 654 applies when one offense facilitates another offense. (*People v. Roberson* (1988) 198 Cal.App.3d 860, 871.) Johnson's conviction for count 1 was for

human trafficking of India with the intent to effect or maintain a violation of section 266i, the statutory basis for count 2. By the statutory language, the human trafficking and pandering offenses facilitated one another. The sentence for count 2 must be stayed.

C

The abstract of judgment incorrectly states the amount of the section 1202.45 parole revocation restitution fine.

At the sentencing hearing, the court imposed a $10,000 restitution fine. (§ 1202.4, subd. (b).) Then the court said, with our emphasis, "There's a PRCS [Post Release Community Supervision] Restitution fine *in the same amount* unless PRCS is revoked and the defendant returned to prison."

The minute order and abstract of judgment accurately reflect the $10,000 section 1202.4, subdivision (b) restitution fine but they list a $300 section 1202.45 fine.

A section 1202.45 fine must be the same amount as the section 1202.4, subdivision (b) restitution fine. (§ 1202.45, subd. (a).) The reporter's transcript demonstrates the court correctly ordered the section 1202.45 fine to be the same as the restitution fine but the minute order and abstract of judgment incorrectly reflect this determination.

The People raised the issue of the section 1202.45 fine in their respondent's brief and Johnson did not address it in his reply brief.

We may correct this error on appeal because the error in the fine results in an unauthorized sentence. (*People v. Rodriguez* (2000) 80 Cal.App.4th 372, 378.)

The section 1202.45 fine must match the restitution fine of $10,000.

# DISPOSITION

We remand for resentencing. Count 2 must be stayed. We also direct the trial court to correct the suspended section 1202.45 fine to be $10,000 and to forward the corrected abstract of judgment to the Department of Corrections and Rehabilitation. The judgment is otherwise affirmed.


WILEY, J.

WE CONCUR:


BIGELOW, P. J.


GRIMES, J.

15